In re N.A.B. FOOD SERVICES, INC., dba Hot Shoppes Restaurants, Debtor.

Bankruptcy No. 1–80–00292.

United States Bankruptcy Court, S.D. Ohio, W.D.

July 19, 1983.

E. Hanlin Bavely, Cincinnati, Ohio, trustee in bankruptcy.

Richard D. Nelson, Cincinnati, Ohio, for debtor.

## DECISION ON OBJECTION TO CLAIM OF BORUCKI

BURTON PERLMAN, Bankruptcy Judge.

In this corporate Chapter 7 bankruptcy, Norbert A. Borucki filed proof of claim number 44 on October 2, 1980. He there claims $25,194.24, the claim being unsecured. The basis for the claim is two promissory notes each in the amount of $10,-000.00, one dated December 18, 1976 and the other January 17, 1977, copies of which

were attached to the proof of claim. The difference between the amount of the claim and the face amount of the claim and the face amount of the notes is interest at eight (8%) percent.

The trustee filed an objection to the claim. In the objection he points out that claimant was the "principal operating officer of the debtor corporation" and claimant "is obviously an 'insider'". The trustee suggests that subordination of claimant's debt may be in order. The matter came on for hearing. The only witness called was claimant.

Borucki testified that debtor was incorporated in August 1976 and the loans in question were made several months later. He testified that debtor is an Ohio corporation and that he was the principal and operating officer. In regard to one of the notes which is the subject of the claim, that dated December 18, 1976, he testified that the consideration was money that he advanced to buy the business. In exchange for this money he acquired a franchise from Marriott. Borucki said that the money given for the second note, that of January 17, 1977, was also paid to Marriott for the purpose of getting going. The evidence showed a corporate minute dated January 24, 1977 recording subscription by him as of that date to 250 shares of common stock in the debtor at $40.00 per share, or $10,000.00. This minute was signed by claimant as "President, Secretary and sole shareholder of N.A.B. Food Services, Inc." A certificate for 250 shares issued to Borucki was dated January 24, 1977. A certificate for a further 250 shares was issued to Borucki April 4, 1977. Claimant testified that he wrote a check for the second stock certificate just referred to on April 4, 1977.

Borucki testified that it was his intention to make a loan with respect to the two notes here in question. Everything came from him. $10,000.00 was paid to Marriott while $10,000.00 was retained for working capital.

By the time of the issuance of the second 250 shares in April 1977, claimant had advanced another $25,000.00 to the corporation and he testified that he was too preoccupied with operations to attend to the detail of issuing notes for the other loans. In a form filed with the Ohio Division of Securities dated January 21, 1977, which had for its purpose the registration of 500 shares of common stock, debtor indicated that the sale price was $20,000.00. The application recited that there was a note payable to claimant for $10,000.00 and that he would be the only shareholder of the corporation. Further, the application recited that: "All consideration received will be used as capital in the corporation" and the application also recited that Borucki intended to issue all shares of stock to himself for consideration within one year. The date of this application was January 21, 1977.

The minutes of the debtor for January 24, 1977 stated that debtor accepted responsibility for repayment to Borucki of a $10,000.00 note which is not further described in the minutes, though it is stated that a copy is attached. In fact no copy was attached in our record. Further, minutes dated January 31, 1977 acknowledged that Borucki had advanced $20,000.00 to complete the initial terms of purchase during the incorporating and purchase proceedings. The minute ratifies a loan in the amount of $10,000.00 and states that in exchange for the second $10,000.00, 250 shares of common stock will be issued. Finally, there was placed in evidence two Management Agreements, both dated December 18, 1976 running between Marriott and Borucki, one relating to premises in Cincinnati, the other to premises in Florida.

Light is shed upon the present issue upon a review of the two Management Agreements.

Both are dated December 18, 1976 and run between the Marriott Corporation and claimant. One agreement relates to a cafeteria in Florida, the other to one in Cincinnati. The Agreements are substantially identical as to the respective provisions except for those relating to payment. In each Agreement reference is made to certain premises leased by Marriott, on which premises claimant, referred to in the Agree-

ments as "Manager", is to operate a cafeteria "on Marriott's behalf." The Agreements make provision for what must be done by Manager. He is to "organize, put into service and manage the operation" of the respective cafeterias. He is to operate the premises in compliance with the requirements of Marriott. Manager is responsible for the preparation and service of food and beverages at the premises. He is to hire and direct all personnel. He is to procure everything necessary for operation of the business.

The Agreements provide that Manager is required to pay Marriott for the transfer of title to the "furnishings, fixtures and equipment" at each location. For Florida, the payment required is $415,500.00 to be paid $20,000.00 at the time of transfer and the balance over a period to be determined by a schedule which is provided. A like provision with respect to Cincinnati requires a $20,000.00 payment at the time of transfer with the balance of $76,300.00 to be paid over a period of time. The term of the agreement relating to the Florida premises is stated to commence on January 15, 1977, while that relating to the Cincinnati premises is stated to commence December 18, 1976.

The payments on account of furnishings, fixtures, and equipment to which we have already made reference are to come into play "on the date of transfer of the management of the Cafeteria." While not expressly stated, a fair inference is that this would be at. about the time of the commencement of the term of each of the Agreements. It therefore follows that during the time period December—January 1976, Borucki had to pay $40,000.00 in cash to Marriott in connection with the payment for furnishings, fixtures, and equipment. It is further fair to infer that at that time he would have been in need for some substantial amount of money by way of working capital in order to operate the cafeterias as contemplated in the Management Agreements. The Agreements give no clue as to the magnitude of working capital requirements and nothing in the evidence presented at the hearing satisfies this lack.

From the evidence presented at the hearing by claimant, about all that can reliably be said is that claimant received notes from the corporation dated December 18, 1976 and January 17, 1977 each for $10,000.00. A stock certificate dated January 24, 1977 for 250 shares of stock was issued to him. Another certificate of stock for 250 shares was issued to him April 4, 1977. There is no documentary evidence showing payments by claimant to debtor. The only evidence on this score is his oral testimony that he did pay to the debtor money for which the notes of December 18, 1976 and January 17, 1977 were given to him. In addition, he testified that he wrote a check for the April 4, 1977 stock certificate, presumably in the amount of $10,000.00. He also testified that by April 1977 he had advanced another $25,000.00 to the corporation.

We believe that the foregoing represents a detailed picture of all the evidence which has been presented to us. On the basis of it, we have concluded that the claim of Borucki must be subordinated to the claims of other creditors. We reach this conclusion because we cannot say on the evidence which is presented that the funds transferred to the debtor by claimant can to any extent be regarded in equity as loans rather than capital contributions. We know that the debtor at its inception was obliged at once to pay to Marriott $40,000.00. In addition, we know that there was a substantial need, which has not been quantified, for working capital. On this record, we certainly cannot say that the amounts which are shown to have been transferred by Borucki to debtor were reasonably sufficient to meet the capital needs of debtor. Claimant in order to justify his claims as valid loans must satisfy the court that the amounts claimed as loans were over and above any amount transferred to the debtor corporation which was adequate reasonably to satisfy the capital needs of the debtor. *Pepper v. Litton*, 308 U.S. 295, 309, 60 S.Ct. 238, 246, 84 L.Ed. 281 (1939). We note the extreme relevance to the present situation of the language appearing at p. 309 to the effect that subordination is in order where

there is not adequate paid in capital in the case of "advances by the dominant or controlling stockholder." See also *Matter of Mobile Steel Company,* 563 F.2d 692, 703 (5th Cir., 1977); *Matter of Multiponics, Inc.,* 622 F.2d 709, 717 (5th Cir.1980).

Here, the purported loans upon which the claim is based represented transfers of funds by Borucki to debtor at the inception of its business enterprises. Borucki was the sole stockholder and in total control of the affairs of the corporation. There were no limits on how he chose to define the consequences ensuing from a given advancement. He had absolute choice as to whether he called it a loan or a stock purchase. Under these circumstances, in the exercise of our equitable powers, we are obliged to disregard the form which he chose in which to cast a given transaction. We certainly must do so where the evidence fails to show that the corporation was reasonably capitalized. Only if there were such a showing in the evidence could we conclude that advancements above the amount of such reasonable capitalization are to be regarded as loans.

The evidence shows an immediate need of $40,000.00 at the inception of the business to be paid to Marriott on account of furnishings, fixtures, and equipment. Over and above that would be a need for some substantial amount by way of working capital in view of the obligations upon claimant in the Management Agreements in operating the business in terms of purchase of inventory, and hiring personnel. No evidence has been presented as to what adequate capitalization for this enterprise should mean. Taking into account all that is presented to us, we conclude that $65,-000.00 is not sufficient capitalization at the outset for this debtor. In view of all of the foregoing we sustain the position of the trustee and hold that the claim of Borucki must be subordinated to the claims of other unsecured creditors.